Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| FRANCES M. LÓPEZ CARATINI<br><br>**RECURRIDA**<br><br>v<br><br>EDDIE H. GONZÁLEZ ALVEZ<br><br>**PETICIONARIO** | KLAN202500503 | *Apelación,* acogida como *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm. HSRF202000029<br><br>Sobre: Custodia |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 23 de junio de 2025.

### I.

El 2 de junio de 2025, el señor Eddie Hernán González Álvez, (señor González o peticionario), presentó un *Recurso de apelación*[1] en el cual solicitó que revoquemos una *Resolución* que, según el peticionario, fue emitida por el Tribunal de Primera Instancia, Sala Superior de Familia y Menores de Humacao (TPI o foro primario), el 28 de abril de 2025, y notificada el 2 de mayo de 2025, pero que no incluyó como Apéndice del recurso de epígrafe. En la referida *Resolución,* el TPI declaró No Ha Lugar las solicitudes presentadas por el peticionario en cuanto a; (1) su solicitud para que su hijo menor de edad no fuera inscrito en el Programa de Educación Especial del Departamento de Educación; (2) la ampliación de las relaciones paterno-filiales según fuera inicialmente establecido por

---

[1] Acogemos el recurso como *Certiorari* por tratarse de un asunto interlocutorio que no modifica la custodia ni la pensión alimentaria del menor.

Número Identificador
RES2025_____

el TPI, Sala Superior de Familia y Menores de San Juan, (3) y su petición para el que menor fuera cambiado de escuela.

Como cuestión de umbral, la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.7 (B) (5), nos confiere la facultad para prescindir de escritos en cualquier caso ante nuestra consideración, con el propósito de lograr su más justo y eficiente despacho. Al amparo de ello, dadas las particularidades de este caso, prescindimos de la comparecencia de la señora López Caratini.

En adelante, pormenorizamos los hechos procesales más relevantes del caso esbozados por la parte peticionaria para la atención del presente recurso, acogido como *Certiorari.*

**II.**

El presente recurso tiene su génesis desde el 2020.[2] Inicialmente, el caso fue atendido por el foro primario de la Sala Superior de San Juan y posteriormente, trasladado al foro primario de la Sala Superior de Humacao. En su escrito, el peticionario no incluyó documentación alguna para sustentarlo, pero esbozó el siguiente tracto procesal:

1.) En el 2015, la Sala Superior del TPI de San Juan, en ese entonces, ordenó la intervención de diversos profesionales para eventualmente establecer el plan de relaciones paternofiliales que se recogió y reiteró por el foro primario y la Unidad Social de Tribunal de San Juan en el 2017 y en el 2019.
2.) Del mismo modo, en el 2020, la Sala Superior del TPI de San Juan le ordenó nuevamente la realización de los informes a la Dra. Judith Mercado (Dra. Mercado). La Dra. Mercado le rindió el correspondiente informe a la Sala Superior del TPI de Humacao.
3.) El 6 de julio de 2020, el foro primario concedió relaciones paterno filiales durante semanas alternas durante el verano. Sin embargo, la señora López Caratini (parte recurrida) se opuso. El TPI, mediante *Orden* del 10 de julio de 2020 se reafirmó en lo ordenado.
4.) El 10 de febrero de 2021, el peticionario acudió ante el foro primario en oposición a la solicitud de la madre para que este fuera privado de las relaciones paternofiliales durante los días de la semana, porque en ese entonces vivía en el pueblo de Humacao. El peticionario reiteró su solicitud de custodia compartida, orden para que la psicóloga del menor rindiera su informe al TPI, y que se

---

[2] Este dato surge de la página oficial del Poder Judicial: poderjudicial.pr/consulta-de-casos/.

evaluara el caso según lo dispuesto en la orden de protección. El TPI tan solo resolvió sostener las relaciones paternofiliales hasta que la Unidad Social presentara su Informe.

5.) El 26 de mayo de 2021, la madre del menor solicitó una *Orden* de Protección bajo la derogada Ley 246, 8 LPRA ant. secs. 1101 *et seq.*,. Para esa misma fecha estaba siendo atendido ante el TPI el asunto de la custodia compartida. La Orden fue referida al Departamento de la Familia (DF), quien rindió el correspondiente informe.

6.) El 5 de agosto de 2021, la señora Carmen Rosario, trabajadora social del TPI, presentó una moción en la cual recomendó que la madre del menor cumpliera con el plan de servicios dispuesto por el Departamento de la Familia.

7.) El 10 de agosto de 2021, el TPI emitió una *Orden* en torno a las recomendaciones del Informe Social del DF. Esta fue notificada el 16 de agosto de 2021. Dentro de lo ordenado por el TPI se encontraba lo siguiente: (1) el ejercicio conjunto de la custodia compartida; (2) una orden para que el padre compartiera con el menor durante fines de semanas alternos; (3) otra para que el padre compartiera con el menor todos los miércoles desde la salida del colegio hasta el jueves cuando lo regresara a la institución educativa; (4) un plan filial a seguir durante el verano, Navidad, cumpleaños del menor, Acción de Gracias, celebración del Día de las Madres y Día de los Padres; (5) que por acuerdo entre las partes pudiesen modificar lo determinado por el TPI, de lo contrario, imperaría lo dispuesto en la orden emitida por el tribunal; (6) una orden dirigida a la madre para someterse al Plan de Servicios del DF; (7) una disposición en cuanto a la imposición de sanciones al progenitor que incumpliese con lo allí ordenado, y (8) la prohibición de hablarle negativamente al menor de su otro progenitor o hacerle conocer su parecer u opinión de la otra parte, entre otras recomendaciones.

8.) El 12 de agosto de 2021, la madre del menor solicitó la modificación de las relaciones paternofiliales durante los martes y jueves, porque el menor debía comenzar clases presenciales.

9.) Durante el 2021, el TPI, por recomendación de la Dra. Judith Mercado (Dra. Mercado), psicóloga del menor, ordenó a la Unidad Social corroborar la situación que existía con la Dra. Mercado y verificar la disposición del caso de la Sala Municipal para que este informara si era necesario hacer modificaciones a las recomendaciones de la Orden.

10.) El 1 de septiembre de 2021, el TPI suspendió provisionalmente las relaciones paternofiliales de los martes y jueves. El peticionario solicitó que se restituyeran las relaciones filiales. El TPI no concedió lo solicitado por el peticionario.

11.) Los días 8 y 10 de septiembre de 2021, la Dra. Mercado le notificó a la Trabajadora Social del TPI que debían de hacerle una evaluación psicoeducativa al menor, y recomendó para esta a la Da. Mary Kay Vidal.

12.) La madre informó que, desde el 8 de mayo de 2021, el menor había sido sometido a una evaluación psicoeducativa.

13.) El 15 de octubre de 2021, el TPI ordenó el cumplimiento de la *Orden* del 21 de septiembre de 2021. El peticionario alega que acreditó su cumplimiento, pero no así la parte recurrida en ese momento.

14.) El 19 de octubre de 2021, el TPI reiteró la *Orden* de recogido y entrega del menor en los predios del establecimiento comercial de Costco en el pueblo de

Caguas. Además, el TPI les había ordenado a las partes la presentación de una Moción conjunta sobre el profesional que estaría realizado la evaluación psicoeducativa del Menor. La parte recurrida nada dispuso. Por su parte, el peticionario solicitó que fuera la Dra. Mary Kay Vidal, recomendada por la Dra. Mercado. La Moción conjunta nunca fue presentada, el peticionario instó varias Mociones como solicitudes reiteradas a la *Orden* dictada por el TPI.

15.) El 19 de octubre de 2021, la parte recurrida notificó que el menor ya había sido evaluado psicoeducativamente y solicitó el cambio de Escuela, por la razón de que el Menor necesitaba educación individualizada bajo el método de Montessori.

16.) El 23 de febrero de 2022, el peticionario presentó una Moción en la que solicitó una orden para matricular al Menor en Caguas y se opuso a su traslado a la escuela Montessori. La oposición del peticionario se fundamentó en el buen aprovechamiento académico del Menor, por lo que se opuso a que el menor fuera inscrito en el Programa de Educación Especial.

17.) El TPI, nuevamente, le requirió a las partes, por acuerdo, escoger el profesional que estaría evaluando al menor. La *Orden* disponía que la evaluación debía ser realizada antes del mes de mayo de 2022. El menor nunca fue evaluado.

18.) El 9 de marzo de 2022, el peticionario presentó nuevamente petición para el cambio de escuela del menor y que se restablecieran las relaciones paternofiliales de martes a jueves. El 11 de marzo de 2022, el TPI denegó la solicitud del peticionario.

19.) El peticionario alega que ha sido privado de todo contacto con el menor desde el 4 de octubre de 2024, sin que exista justa causa para ello. En su escrito, alega que el foro primario expresó que el menor no quería ver a su padre, y que no iba a conceder relaciones paternofiliales porque el menor tenía "ansiedad". Todo esto, según arguye, sin que se ordenara una nueva evaluación, sin corroborar las manifestaciones realizadas por el menor, y sin tomar en consideración lo testificado por la Dra. Jenny Sanabria.

20.) El peticionario alega que el 28 de abril de 2025 el TPI emitió una *Resolución* notificada así, a las partes el 2 de mayor de 2025, el cual no fue incluida en el recurso presentado ante este tribunal. El peticionario recurre de dicha *Resolución.*

Inconforme con la *Resolución* emitida por el TPI, el peticionario recurre ante este Tribunal y formula los siguientes señalamientos de error:

Primer señalamiento: Erró el Tribunal de Primera Instancia al ordenar mantener las relaciones paternofiliales paralizadas desde el 4 de octubre de 2024.

Segundo señalamiento de error: Erró el Tribunal de Primera Instancia al ordenar a las partes inscribir al menor en el Programa de Educación Especial del Departamento de Educación a base de una "evaluación" hecha al menor cuando tenía 9 años de edad y muy a pesar de que todos los informes escolares del menor reflejaban aprovechamiento académico. Validando las acciones unilaterales de la demandante, quien antes de la Resolución de la que se recurre inscribió al menor en completa violación a la patria

potestad. Y sin haberse llevado a cabo la nueva evaluación ordenada por el tribunal y boicoteada por la demandante. Muy a pesar de que la evaluadora, María Colón Scarano, un año después de atender al menor, enmendó su informe a solicitud de la demandante, refiriéndolo a Educación Especial, sin haberlo reevaluado.

Tercer señalamiento de error: Erró el Tribunal de Primera Instancia al declarar No Ha Lugar el cambio de Escuela solicitado para la Escuela intermedia y superior del menor, aduciendo que el menor no quiere, que tiene amigos, muy a pesar de que la Escuela a la que asiste el menor no ofrece absolutamente nada más allá de lo básico; muy a pesar de que refieren estudios individualizados el salón es de 23 estudiantes, según el testimonio de la propia directora, y muy a pesar de que no ofrecen deportes, arte, música, no tienen clubes, ni nada que le brinde herramientas al menor para su desarrollo académico.

Cuarto señalamiento de error: Erró el Tribunal de Primera Instancia al obviar el testimonio de la Dra. Jenny Sanabria, así como prueba documental sometida al expediente.

En adelante, evaluaremos las normas jurídicas atinentes al recurso presentado ante nuestra consideración.

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016). Véase, además, ***IG Builders et al v. BBVAPR***, 185 DPR 307, 337 (2012). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. ***Rivera Figueroa v. Joe's European Shop***, 183 DPR 580, 596 (2011).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1,[3] establece las instancias en las que el foro revisor posee autoridad

_____

[3] Esta Regla dispone que:

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual

para expedir un auto de *certiorari* sobre materia civil. ***Scotiabank v. ZAF Corp. et al.,*** 202 DPR 478 (2019). La citada regla delimita el alcance jurisdiccional del Tribunal de Apelaciones para atender un recurso de *certiorari* que se trate sobre la revisión de dictámenes interlocutorios del Tribunal de Primera Instancia. ***Mun. Caguas v. JRO Construction, Inc.***, 201 DPR 703 (2019).

Si el auto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra*, debemos pasar entonces a un segundo análisis. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso.

Con el fin de que podamos ejercer de manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, R.40, establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[4]

---

esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

[4] Esta Regla dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

**B.**

La Regla 74 del Reglamento del Tribunal de Apelaciones, *supra,* R. 74 exige que las partes acompañen un Apéndice como parte de su escrito. A tenor con ello, y lo pertinente a este caso, la Regla 34 (d) dispone que los escritos de *certiorari,* contendrán "[t]oda resolución u orden, y toda moción o escrito de cualesquiera de las partes que forme parte del expediente original en el Tribunal de Primera Instancia, en los cuales se discuta expresamente cualquier asunto planteado en la solicitud de *certiorari,* o que sean relevantes a ésta". Íd. R.34(E)(1)(d). Además, dispone que deberá contener "[c]ualquier otro documento que forme parte del expediente original en el Tribunal de Primera Instancia y que pueda ser útil al Tribunal de Apelaciones a los fines de resolver la controversia". Íd. R.34(E)(1)(e). **El incumplimiento con alguno de los requisitos anteriores impide que el recurso se perfeccione**.

**IV.**

En el caso de marras, el señor González solicita que revoquemos una *Resolución* emitida por el TPI. El peticionario no acompañó la misma al recurso. Tampoco acompañó los documentos pertinentes que nos permitirían evaluar su reclamo. Adviértase que este tenía la obligación, de conformidad con las Reglas 34 y 74 del Reglamento del Tribunal de Apelaciones, supra, de incluir en el recurso presentado ante nuestra consideración cualquier documento pertinente. Ante el incumplimiento con los requisitos anteriores el recurso presentado no quedó debidamente perfeccionado. Aún más importante, el recurso no contiene una relación coherente y ordenada del tracto procesal del caso. Por lo cual el peticionario no nos ha puesto en condición de evaluar y resolver, en los méritos, el recurso.

En el ejercicio de nuestra discreción y a base de lo examinado, denegamos el *Certiorari*, por no habernos colocado en posición de resolverlo.

**V.**

Por los fundamentos pormenorizados, se *deniega* la expedición del auto de *certiorari* solicitado.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones